UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CIVIL ACTION NO. 15-13492-RWZ


DAVID CARL CARDONI

v.

NANCY A. BERRYHILL,[1]
Acting Commissioner of the Social Security Administration

<u>MEMORANDUM AND ORDER</u>

March 22, 2017

ZOBEL, S.D.J.

      This is an action for judicial review of a final decision by the Acting

Commissioner of Social Security Carolyn W. Colvin (the "Commissioner") denying

David Carl Cardoni's ("plaintiff") application for Social Security Disability Insurance

Benefits ("SSDI").  Plaintiff filed a motion seeking an order reversing the decision of the

Commissioner (Docket # 10), and the Commissioner filed a cross-motion seeking an

order affirming the decision (Docket # 12).

**I.    Background**

      **A.    Applicable Statutes and Regulations**

      To show entitlement to SSDI benefits, a claimant must show that he is unable to

"engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which . . . has lasted or can be expected to last for a

continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To meet this

---

[1]      Pursuant to Fed. R. Civ. P. 25(d), Nancy A. Berryhill has been substituted for Carolyn W.
Colvin as Acting Commissioner of the Social Security Administration.

definition, a claimant must have an impairment, or impairments, of such severity that it
renders him "not only unable to do his previous work but cannot, considering his age,
education, and work experience, engage in any other kind of substantial gainful work
which exists in the national economy[.]"  Id. at § 423(d)(2)(A); see also 20 C.F.R. §
404.1505(a).

The ALJ analyzes whether a claimant is disabled using an established "five-step
sequential evaluation process."  See 20 C.F.R. § 404.1520(a)(4)(i)–(v).  Under that
framework, the ALJ first determines whether the claimant is currently engaging in
substantial gainful work activity.  If not, then at step two, the ALJ decides whether the
claimant has a "severe" medical impairment or impairments, which means the
impairment "significantly limits [the claimant's] physical or mental ability to do basic work
activities[.]"  Id. at § 404.1520(c).  If the claimant has a severe impairment or
impairments, then the ALJ considers third whether the impairment or impairments meets
or equals an entry in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, App'x 1,
and meets the duration requirement.  If so, then the claimant is considered disabled.  If
not, then the ALJ must determine the claimant's residual functioning capacity ("RFC"),
which is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. §
404.1545(a)(1).  The ALJ then moves to step four and determines whether the
claimant's RFC allows him to perform his past relevant work.  If the claimant has the
RFC to perform his past relevant work, then he is not disabled.  If the claimant does not,
then the ALJ decides, at step five, whether the claimant can do other work in light of his
RFC, age, education, and work experience.  If the claimant can, he is not considered
disabled; otherwise, he is.  "Once the applicant has met his or her burden at Step 4 to

2

show that he or she is unable to do past work due to the significant limitation, the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the applicant can still perform."  Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001); see also 20 C.F.R. §§ 404.1512(f), 404.1560(c)(2).

## B.    Procedural Background

Plaintiff filed an application for SSDI benefits on February 13, 2013, claiming he had been disabled since January 1, 2007, the alleged onset date ("AOD").  On May 16, 2013, the Social Security Administration ("SSA") initially denied plaintiff's claim, and again denied it upon reconsideration on September 10, 2013.  In October 2013, plaintiff filed a written request for a hearing before an Administrative Law Judge ("ALJ"), which was conducted on June 24, 2014.  At the hearing, plaintiff and a vocational expert ("VE") testified.  On July 24, 2014, the ALJ issued a decision finding that plaintiff was not disabled.

## C.    The ALJ's Decision

The ALJ denied plaintiff's SSDI application on July 24, 2014, in a written decision structured around the five-step disability test.  First, the ALJ found that plaintiff had not engaged in substantial gainful activity since his application date, February 13, 2013.  Next, the ALJ found that "[t]hrough the date last insured, [plaintiff] had the following severe impairments: chronic thoracic sprain/strain, lumbar degenerative disc disease status post remote fracture and spinal fusion at L4-S1 ([from] 1982), migraine cluster

headaches, affective and anxiety related disorders, and alcohol abuse." R.[2] at 12.[3]

According to the ALJ, none of these impairments met or were medically equal to any of

the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

> He concluded that plaintiff retained the RFC through the DLI:
>
> [T]o perform light work as defined in 20 CFR 404.1567(b) except he could lift
> 20 pounds occasionally and 10 pounds frequently, and he could sit, stand or
> walk for 6 hours with normal breaks.  In addition, he could occasionally climb
> ramps or stairs, balance, stoop, kneel, crouch and crawl, but he could never
> climb ropes, ladders or scaffolds.  Furthermore, he should avoid concentrated
> exposure to extreme cold and heat, vibration, fumes, odors, dust, gases, and
> poor ventilation.  Finally, he could have occasional social interaction with the
> public, coworkers, and supervisors, and he could perform simple, routine and
> repetitive instructions and tasks.

Id. at 14–15.  In developing this RFC assessment, the ALJ considered plaintiff's

testimony at the hearing, findings of his primary care physician, a report from an

evaluating spine specialist, findings of his treating mental health therapist, opinions of

four state agency consulting physicians, and findings of a consulting psychologist.

At step four, the ALJ found, based in part on testimony from a VE, that plaintiff

had the RFC to perform his past relevant work.  Specifically, the ALJ heard testimony

from VE, James Soldner, in response to the following hypothetical:

> [A]ssume an individual who is the same, education, and work history of the
> Claimant; who is able to lift 20 pounds occasionally and 10 frequently; stand
> and walk at least six hours in an eight hour day and sit with normal breaks,
> about six hours in an eight hour work day.  Please further assume this
> individual has the ability to occasionally climb, balance, stoop, kneel, crouch
> or crawl but never climb a ladder; and must avoid concentrated exposure to
> extreme cold, extreme heat, vibration, fumes, odors, dust, gases, and poor

---

[2]   "R." refers to the Social Security administrative record, which was manually filed in this appeal at ECF No. 8.

[3]   The ALJ also found that plaintiff had the following non-severe impairments, which "cause less than minimal functional limitations in the claimant's ability to perform basic work activities": hypertension, hyperlipidemia, and obstructive sleep apnea.  R. at 12.

ventilation.  Lastly, assume this individual's work is limited to only occasional interaction with the public, coworkers, and supervisors and must be limited to the performance of simple, routine, and repetitive instructions.

Id. at 47–48.  The VE testified that, assuming these facts, the individual would be able to perform work as a food and beverage order clerk, which is a job plaintiff previously held. Based on this testimony, the ALJ concluded that plaintiff was not disabled at any time relevant to the decision.

### D.    The Appeal

Plaintiff sought review of the ALJ's decision with the SSA's Appeal Council, which it denied on August 20, 2015.  This made the ALJ's decision the final decision of the Commissioner.  Having exhausted his administrative remedies, plaintiff then brought this case under 42 U.S.C. § 405(g), seeking reversal of the final determination.

## II.    Standard of Review

The Commissioner's findings of fact are conclusive if based on the correct legal standard and supported by substantial evidence.  42 U.S.C. § 405(g); Seavey, 276 F.3d at 9.  Substantial evidence includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  See Richardson v. Perales, 402 U.S. 389 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  So long as the Commissioner's determinations are supported by substantial evidence, they must be affirmed, "even if the record arguably could justify a different conclusion." Rodriguez Pagan v. Sec'y Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).  However, a denial of benefits will not be upheld if the decision was "derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).  In determining the requisite quantity

5

and quality of the evidence, the court "will examine the record as a whole, including whatever in the record fairly detracts from the weight of the [Commissioner's] decision." Rohrberg v. Apfel, 26 F. Supp. 2d 303, 306 (D. Mass. 1998) (citation omitted). Questions of law are reviewed de novo. Seavey, 276 F.3d at 9.

III.    Discussion

In support of his motion to vacate the Commissioner's decision, plaintiff raises two primary arguments. First, he contends that the ALJ failed to properly determine the onset date of his mental disability pursuant to Social Security Ruling ("SSR") 83-20 by failing to call on the services of a medical advisor when the record lacked contemporaneous medical evidence of his mental illness prior to the DLI, and the ALJ had to infer the onset date. Second, plaintiff contends that the ALJ failed to properly follow the requirements of SSR 85-16 for evaluating his RFC for mental impairments.[4]

A.    SSR 83-20

SSR 83-20 provides guidance on determining the onset of disability. Specifically, with respect to "disabilities of nontraumatic origin," as the parties appear to agree is relevant here, "the determination of onset involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity." SSR 83-20, 1983 WL 31249, at *2 (Jan. 1, 1983). Accordingly, the analysis begins with the individual's statement as to when disability began, which is typically found on the disability application. Id. "The day the impairment caused the individual to stop work is frequently of great significance in selecting the proper onset

---

[4]    Because I find that the ALJ erred in applying SSR 83-20, I need not reach plaintiff's second argument concerning SSR 85-16.

6

date." Id.  But these two factors are "significant in determining onset only if [they are] consistent with the severity of the condition(s) shown by the medical evidence." Id., at *1.

The regulations note, however, that "[w]ith slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling.  Determining the proper onset date is particularly difficult, when, for example . . . adequate medical records are not available.  In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process." Id., at *2.  "Arguably, every onset determination reached by an ALJ—a lay individual with no required medical training—will involve some degree of ambiguity and inference." Fisher v. Colvin, 831 F.3d 31, 35 (1st Cir. 2016).  But, if the ALJ "lacks 'a legitimate medical basis' to identify a particular onset date because the evidence regarding onset is ambiguous, [the ALJ] 'should call on the services of a medical advisor' to assist in inferring an onset date that is supported by a '[c]onvincing rationale.'" Wilson v. Colvin, 17 F. Supp. 3d 128, 139 (D.N.H. 2014) (citing SSR 83-20, 1983 WL 31249, at *3).

### 1.    Relevance of SSR 83-20

As an initial matter, I must address the Commissioner's statement that an ALJ does not need to follow SSR 83-20 when a claimant has not been found to be disabled at any time between the AOD and the DLI.  Docket # 13, at 7.  In other words, the Commissioner takes the position, as it has in other cases, that because SSR 83-20 "addresses the *onset* date of disability, it presupposes an initial finding that the claimant is or was disabled, and is not relevant where the claimant has never been found to be

disabled."[5] <u>Mazonson v. Colvin</u>, Civ. No. 15-12979-ADB, 2016 WL 6776280, at *7 (D.

Mass. Nov. 15, 2016); <u>see</u> <u>Silverio v. Astrue</u>, Civ. No. 10-40202-FDS, 2012 WL 996857,

at *6 (D. Mass. Mar. 21, 2012) ("An ALJ is not required to consider SSR 83-20 unless

the ALJ first finds that the claimant was disabled at some point prior to the date last

insured."); <u>see also</u> <u>Britt v. Colvin</u>, 125 F. Supp. 3d 349, 360 (D. Mass. 2015) (finding

that SSR 83-20 did not apply where the ALJ determined that claimant was not disabled

during the relevant period).  However, as recently noted by the First Circuit, the

Commissioner has inconsistently "suggest[ed] that the ruling <u>does</u> apply to the disability-

prior-to-DLI inquiry if the claimant is found to be presently disabled. The Commissioner

therefore argues that the onset determination and the disability-prior-to-DLI

determination are distinct, except when they are not." <u>Fisher</u>, 831 F.3d at 37–38.  As a

result, other courts in this circuit have held the SSR 83-20 applies regardless of whether

a finding of present disability has been made.  <u>See</u> <u>Wilson</u>, 17 F. Supp. 3d at 139–43.

<u>Fisher</u> did not settle the question because the case was decided on other grounds.

<u>Fisher</u>, 831 F.3d at 36.  Thus, there remains "no uniform approach in the courts" on this

issue.  <u>Id.</u> at 38.

      Because "the Commissioner has not identified a rationale for applying SSR 83-20

to the disability-prior-to-DLI inquiry only when an ALJ makes a present disability finding,"

<u>Fisher</u>, 831 F.3d at 37, and because such a reading "would lead to the puzzling result

that the protection of SSR 83-20 hinges on whether the ALJ has had reason to make a

---

[5]     Plaintiff appears to agree with the Commissioner's interpretation of the regulations.  <u>See</u> Docket # 11, at 7 ("The first step in the ALJ's analysis should have been whether the claimant is currently disabled, and then a determination as to when that disability began should have followed, using the provisions of SSR 83-20.").

present disability finding," <u>Mazonsen</u>, 2016 WL 6776280, at *8, I reject the
Commissioner's inconsistent and unsupported position in the case at hand.  <u>See</u>
<u>Mazonsen</u>, 2016 WL 6776280, at *8 ("It would be contrary to the spirit of the Social
Security Act and unreasonably rigid to hold that, as a blanket rule, the protections of
SSR 83-20 do not apply where an ALJ has not had occasion to determine the claimant's
present disability status.").

In this case, similar to <u>Mazonsen</u>, the ALJ did not make a present disability
determination solely because Plaintiff applied only for SSDI benefits, and not SSI
benefits, and "the Court sees no reason why [he] would deserve greater protection if [he]
had applied for the latter."  <u>Id.</u>  Further, the regulations instruct ALJs "to take a nuanced,
detailed, and sensitive look at the date of onset for disabilities of non-traumatic origin,
especially slowly progressive diseases like [affective and anxiety disorders]."  <u>Id.</u>

### 2.  Applicability of SSR 83-20

Here, plaintiff asserts an AOD of January 1, 2007.  His work history reflects that
he stopped working in February 2006, with a brief stint as a laborer in December 2007,
nearly a year after his AOD; however, he only earned $49, which is "far below the
amount required for [substantial gainful activity] in 2007."  R. at 11-12.  The record
contains no contemporaneous medical evidence in support of plaintiff's AOD, and is
ambiguous regarding onset date.

Plaintiff's earliest medical records are from April 2010, a year prior to the DLI, and
do not reflect any complaints of mental disorders or mental treatments.  His earliest
medical record evidencing his mental disorder is from June 2012, a year after the DLI,
when he first visited with Lance McElaney, a licensed independent clinical social worker,

and Dr. John Eckelman, a psychologist.  They noted that plaintiff had been hospitalized at Medfield State Hospital in 1972 when he was 13 years old for about two weeks due to psychiatric impairment.  Although the hospitalization occurred in his childhood, plaintiff continued to discuss it with his mental health therapist as late as April 2014.

Further, on April 25, 2013, Dr. Laura Weissberg, a Disability Determination Services consultant, reviewed plaintiff's entire record and noted that "[w]hile claimant can complete activities from time to time, his increased sensitivity and impulsivity from depression and anxiety would interfere with his ability to maintain adequate attention and pace at simple tasks for 2/8/40."  R. at 58.  She recommended an onset date of March 1, 2012, three months before he sought psychiatric treatment solely because "there [was] no [medical evidence record] to support the earlier date."  R. at 58. Importantly, she—nor any of the other consulting state agency physicians—did not dismiss the possibility that plaintiff's disabling condition existed prior to the expiration of his insured status.

The ALJ acknowledged that the medical evidence was inconclusive.  Rather than explore other sources of evidence, as SSR 83-20 requires, he drew a negative inference.  See R. at 13 ("I find there is insufficient evidence of a severe mental impairment prior to the remote date last insured, June 30, 2011; however, the objective evidence does support a severe mental impairment as of June 2012[.]"); cf. Demeo v. Colvin, Civ. No. 13-11444-DLC, 2015 WL 5768953, at *5 (D. Mass. Sept. 30, 2015) ("Medical evidence is ambiguous where there is at least some evidence that would allow the ALJ to infer that the alleged onset date is accurate, but the claimant's medical records do not provide a precise onset date for his disability.").  Here, the record

10

contains some—albeit very thin—evidence that suggests plaintiff had been suffering

from mental impairments since the AOD, if not as early as 1972 when he was

hospitalized due to psychiatric impairment.  <u>See</u> R. at 42 ("Q [by plaintiff's

representative]: Okay.  How – sorry – how long have you had issues related to anxiety?

A: Oh, my whole life.").

      "Under SSR 83-20, even a complete lack of medical documentation is not fatal to

a claimant's case; in that situation, an ALJ must look for lay evidence from family

members, friends, and former employees.  It would be contradictory to decide that,

because the ALJ did not find sufficient evidence to conclude that an individual was

disabled prior to a certain point in time, the claimant should be denied the very

procedural safeguard designed for situations in which evidence of onset can be unclear."

<u>Mazonson</u>, 2016 WL 6776280, at *8; <u>see also</u> <u>Briscoe ex rel. Taylor v. Barnhart</u>, 425

F.3d 345, 535 (7th Cir. 2005) ("Where no reasonable inference is possible based on the

available evidence and additional medical evidence is not available, 'it may be

necessary to explore other sources of documentation . . . from family members, friends,

and former employees to ascertain why medical evidence is not available for the

pertinent period and to furnish additional evidence regarding the course of the

individual's condition.'") (quoting SSR 83-20, 1983 WL 31249, at *3).  The ALJ, however,

failed to develop the record by looking for any additional lay evidence, which is a legal

error requiring remand.  <u>See</u> <u>Mason v. Apfel</u>, 2 F. Supp. 2d 142, 150 ("Where, as SSR

83-20 directs, the onset date must be inferred from the medical and other evidence

describing the history and symptomatology of the disease process, the administrative

law judge is required to retain the assistance of a medical advisor.  Without that

assistance, the administrative law judge does not have an adequately developed record upon which to base his decision.") (citations omitted).

### 3.    Other Errors with ALJ Decision

The ALJ also erred in his reliance of post-DLI evidence when assessing plaintiff's impairments prior to the DLI.  First, he concluded in step two of the five-step analysis that plaintiff, through June 30, 2011, had severe mental impairments.  See R. at 12 (finding that plaintiff had affective and anxiety-related disorders); see also 20 C.F.R. Pt. 404, Subpt. P, App'x 1 (categorizing affective and anxiety-related disorders as mental disorders).  But in the very next step, the ALJ found that "there is insufficient evidence of a severe mental impairment prior to the remote date last insured, June 30, 2011; however, the objective evidence does support a severe mental impairment as of June 2012, which is after the Title II period of consideration."  R. at 13.  Thus, it appears that the ALJ relied on post-DLI evidence to conclude that plaintiff had severe mental impairments through the DLI in step two; but when determining in step three whether those impairments met or equaled an entry in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, App'x 1, he rejected the same post-DLI evidence.  This inconsistency is baffling.

Moreover, the ALJ's  finding related to plaintiff's RFC of mental impairments between the AOD and through the DLI were based entirely on evidence that post-dated this time period.  Specifically, the ALJ relied entirely on medical evidence and opinions from state agency consultants and treating physicians that were all conducted well after plaintiff's claimed AOD and after the DLI.  See O'Dell v. Astrue, 736 F. Supp. 2d 378, 387 (D.N.H. 2010) ("Medical examinations conducted after the relevant injury period are

also of limited relevance in disability determinations.") (citations omitted); cf. Mason, 2 F. Supp. 2d at 150 (finding that "it is reasonable to infer that the onset date of Plaintiff's mental impairment was earlier than her appointment with [a treating psychiatrist]."). During the hearing, the ALJ further failed to develop the record and question plaintiff about his abilities and mental impairments between the AOD and through the DLI. Instead, his questions were limited to plaintiff's current state at the time of the hearing. See R. at 33 ("Q: Why don't you tell me what a normal day consists of [for] you, from the time you wake up to the time you go to sleep?  How do you generally occupy your time during the day?").  Additionally, when obtaining the opinion from the VE about plaintiff's RFC, the ALJ failed to include in his hypothetical plaintiff's alleged mental limitations.  As such, I cannot determine that the Commissioner's decision is supported by "substantial evidence" of record.

## IV.   Conclusion

Plaintiff's Motion to Reverse the Commissioner's Decision (Docket # 10) is ALLOWED, and Defendant's Motion to Affirm the Commissioner's Decision (Docket # 12) is DENIED.

Judgment may be entered reversing the decision of the Commissioner and remanding to develop the record consistent with this order and the requirements under SSR 83-20.

_____March 22, 2017_____                _____/s/Rya W. Zobel_____
DATE                                                     RYA W. ZOBEL
                                                     UNITED STATES SENIOR DISTRICT JUDGE